No. 03-366

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 79N

DARELL McDONALD,

       Petitioner and Appellant,

  v.

STATE OF MONTANA,

       Respondent and Respondent.

APPEAL FROM:    District Court of the Third Judicial District,
                    In and For the County of Granite, Cause No. DC 97-08,
                    Honorable Ted L. Mizner, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Edmund F. Sheehy, Jr., Cannon & Sheehy, Helena, Montana

       For Respondent:

       Honorable Mike McGrath, Attorney General; John Paulson, Assistant
       Attorney General, Helena, Montana

       Blaine C. Bradshaw, County Attorney, Philipsburg, Montana

Submitted on Briefs:  February 17, 2004

Decided:  March 30, 2004

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of nonciteable cases issued by this Court.

¶2      Darell McDonald's conviction stems from his actions in November of 1996. McDonald and his friend, Tucker, fired over a dozen shots at a herd of twenty elk that were grazing in a fenced pasture near several hundred cattle.  After a trial, the Granite County Justice Court found McDonald guilty of: (1) hunting a bull elk without a proper license; (2) failure to wear the required orange-colored garments while hunting; (3) five counts of hunting more than one game animal; and (4) creating a hazard in the act of game hunting. McDonald appealed to the District Court, and after a jury trial, with the exception of one of the counts of hunting more than one game animal, was found guilty on each of the same counts.  With new counsel, McDonald appealed to this Court, claiming "plain error" owing to comments of the prosecutor during his closing argument.  We rejected this claim in our decision *State v. McDonald*, 2000 MT 49N.  McDonald petitioned the District Court for postconviction relief, claiming ineffective assistance of counsel at trial and on appeal, and that his consecutive sentences should be concurrent.  The District Court denied his petition. He now appeals that denial.  We affirm.

¶3 For the most part, McDonald's claims of ineffective assistance of appellate counsel hinge on his assumption that his trial counsel was ineffective. According to McDonald, his appellate counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel. Thus, in order to understand his claim of ineffective assistance of counsel on appeal, we first address whether McDonald suffered from ineffective assistance of counsel at the trial level.

¶4 We have adopted the two-part test from *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 691, to measure whether the assistance of counsel was effective. *State v. Boyer* (1985), 215 Mont. 143, 147, 695 P.2d 829, 831. Under the first part, the petitioner must show that counsel's performance was deficient. We apply a highly deferential standard to review the strategic decisions an attorney must make during the trial process. We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Under the second part of the *Strickland* test, a petitioner must prove that the ineffective assistance of counsel caused him to suffer prejudice. If either part of the *Strickland* test would be dispositive, we need only address that part of the test. We only address the first part of *Strickland* on each of McDonald's claims.

¶5 McDonald claims that his trial counsel was ineffective in several discrete instances. First, McDonald claims that his trial counsel had an inherent conflict of interest from his continued representation of both McDonald and Tucker. According to McDonald, the dual representation precluded him from asserting his own innocence independently of Tucker's guilt or innocence. Although trial counsel did not specifically discuss this aspect of dual

3

representation, he did confer with McDonald and Tucker on several occasions about whether or not they both wanted to continue with him as their counsel. In response, both McDonald and Tucker continued to assert that they were both completely innocent and that their version of events would corroborate their mutual innocence. Further, when McDonald brought up the possibility of obtaining another attorney, trial counsel encouraged him to do so. When the county attorney wanted to cut a deal with Tucker in return for testimony against McDonald, trial counsel presented this issue to both Tucker and McDonald, individually and jointly. However, they both decided to continue to assert their mutual innocence and to continue with him as their counsel. Thus, although there was potential for a conflict of interest, there was never an actual conflict of interest.

¶6    Secondly, McDonald claims that trial counsel was ineffective because he failed to interview all of the potential witnesses or failed to meet the professional standard for interviewing witnesses. McDonald's trial counsel explained that many of McDonald's proposed witnesses did not have direct knowledge of the event. Trial counsel, his associate, or his paralegal contacted every potential witness with direct knowledge of the event. McDonald also claims that trial counsel was somehow ineffective in interviewing Bryan Butler, who McDonald wanted to use as an expert in ballistics. Trial counsel presented Butler's deposition testimony, that Butler could identify the caliber of a given bullet based on his personal experience in reloading. The District Court refused to consider Butler an expert. McDonald claims that trial counsel somehow failed to sufficiently develop Butler's credentials as an expert. However, McDonald fails to make a showing that Butler had sufficient credentials to be considered an expert. McDonald also claims trial counsel failed

4

to interview witness White, who testified for the State. While trial counsel admitted to not interviewing White until the day of trial, he already had White's prepared written statement and thus, was prepared for him at trial.

¶7 Third, McDonald claims his counsel was ineffective for failing to raise an issue about the State's failure to preserve exculpatory evidence. McDonald had attempted to give the warden a bullet which McDonald had allegedly taken out of the carcass of the elk that he admitted to shooting. The warden, however, refused to accept the bullet. McDonald claims that analysis of the bullet would have proven that it was dissimilar to the bullets from the other five elk that he was charged with killing and would have thus exonerated him. Accordingly, he contends counsel was ineffective for failing to make an issue of the State's refusal to preserve exculpatory evidence. However, McDonald's trial counsel makes clear that he considered the issue, and due to problems with the chain of custody of the bullet, declined to raise it as an issue.

¶8 McDonald also claims that his trial counsel erred in failing to request either a directed verdict or a dismissal of the charge of hunting a bull elk without a license. The warden testified at trial that while the spike elk had several wounds, they were only from one bullet. McDonald argues that in order to be guilty of "hunting" an animal, you must kill the animal. Thus, where the spike was killed by one bullet, logic dictates that only one of the defendants can be found to have "hunted" it. Our statutory definition of hunting is much broader than the narrow "successful killing" interpretation that McDonald advocates:

> "Hunt" means to *pursue*, shoot, wound, kill, *chase*, lure, possess, or capture
> or the act of a person possessing a weapon, as defined in 45-2-101, or using

5

a dog or a bird of prey for the purpose of shooting, wounding, killing, possessing, or capturing wildlife protected by the laws of this state in any location that wildlife may inhabit, *whether or not the wildlife is then or subsequently taken*. The term includes an attempt to take by any means, including but not limited to pursuing, shooting, wounding, killing, chasing, luring, possessing, or capturing.

Section 87-2-101(8), MCA (1995) (emphasis added). McDonald's trial counsel reasonably interpreted the statute to include the "hunting" activities of McDonald and Tucker. He thus refused to make what he decided would be a meritless or frivolous motion–once again, a strategic decision. Making another claim, McDonald similarly argues he could not have been convicted of four counts of hunting more than one game animal, because one of the cow elk had only one bullet. This claim is identical to his argument about shooting the spike bull elk. As the discussion indicates, each of the decisions of trial counsel which McDonald now faults was a strategic decision.

¶9 The record establishes that McDonald was, in the words of his trial counsel, an "exasperating and demanding client" with a high degree of involvement in his case. In each of the above-claimed instances of ineffective assistance, McDonald's trial counsel conferred with McDonald in regard to the decision at issue. The record establishes that each of these issues was discussed with McDonald and that a strategic decision was made about each. Thus, rather than a situation where counsel failed to take any action through negligence, or ignorance of the law, we are presented with strategic decisions. The *Strickland* test does not allow us to second guess strategic decisions. Rather, we give a high deference to counsel's strategic decisions. Therefore, we conclude that McDonald's counsel at trial was not ineffective.

¶10    McDonald also claims that his counsel on appeal was ineffective. Just as he did in regard to his trial counsel, McDonald also complains about strategic decisions made by his appellate counsel. McDonald's appellate counsel reviewed the case and McDonald's claims of error. Appellate counsel then made a strategic decision to appeal only one issue, the plain error doctrine, which he said was done, in part, to encompass McDonald's assertions of ineffective assistance of trial counsel in failing to object to the prosecutor's closing argument. Because McDonald has failed to show that appellate counsel made this decision through neglect, or through ignorance of the law, we conclude that counsel made an informed and strategic decision to raise the single, best claim that he could. *See Jones v. Barnes* (1983), 463 U.S. 745, 750-54, 103 S.Ct. 3308, 3312-14, 77 L.Ed.2d 987, 992-95. Thus, rather than address the merits of each of the other issues McDonald claims should have been raised, we only address counsel's decision to raise one single issue. We give such decisions great deference and conclude that appellate counsel was not ineffective in this regard.

¶11    However, McDonald also claims that appellate counsel, in failing to raise a constitutional challenge to § 45-8-113, MCA, acted in ignorance or under a mistake of law, in which case the decision deserves no deference. McDonald claims that § 45-8-113, MCA (1995), is unconstitutionally vague and ambiguous. That section provides: " (1) A person commits the offense of creating a hazard if he knowingly: . . . (e) being a person in the act of game hunting, acts in a negligent manner or knowingly fails to give all reasonable assistance to any person whom he has injured[.]" Section 45-8-113(1)(e), MCA (1995). Neither McDonald's trial counsel nor appellate counsel viewed this statute as unconstitu-

7

tional.  On appeal, McDonald claims both counsel were ineffective for failing to challenge the statute as unconstitutionally vague or ambiguous.  We disagree.  The statute at issue here uses the recognized legal standard of negligence.  It is sufficiently written such that a person of ordinary intelligence would reasonably know the statute makes it illegal to indiscriminately shoot at a herd of twenty elk feeding in a pasture alongside a herd of domestic cattle. Neither McDonald's trial counsel nor his appellate counsel was operating in ignorance or under a mistake of law, and neither was ineffective for failing to raise this claim.

¶12   Lastly, McDonald claims the District Court erred in failing to address his petition to change his consecutive sentences to concurrent sentences.  However, McDonald could have properly raised such a claim in his direct appeal.  He is now precluded from raising the issue on his petition for postconviction relief.  Section 46-21-105, MCA.  Therefore, the District Court did not need to address this issue.  The order of the District Court is affirmed.


                                            /S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ JAMES C. NELSON
/S/ JOHN WARNER

8